# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| **WSOU INVESTMENTS, LLC D/B/A** | § | **CIVIL ACTION 6:20-cv-00573-ADA** |
| **BRAZOS LICENSING AND** | § | **CIVIL ACTION 6:20-cv-00575-ADA** |
| **DEVELOPMENT,** | § | **CIVIL ACTION 6:20-cv-00577-ADA** |
| *Plaintiff*, | § | **CIVIL ACTION 6:20-cv-00585-ADA** |
| | § | |
| **v.** | § | |
| | § | |
| **GOOGLE LLC,** | § | |
| *Defendant.* | § | |
| | § | |
| | § | |

**PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF**

# Table of Contents

I.      Legal Standards ......................................................................................................1

        A.      Claim Construction Generally..................................................................1

        B.      Indefiniteness .............................................................................................2

II.     U.S. Patent No. 7,620,967 (Case No. 6:20-cv-00573) Disputed Claim Terms ..............2

                1.      "broadcast/broadcasting" ...................................................2

III.    U.S. Patent No. 8,559,928 (Case No. 6:20-cv-00575) Disputed Claim Terms ..............3

                1.      "contact information"..........................................................3

                2.      "tree structure" ...................................................................4

IV.     U.S. Patent No. 8,737,961 (Case No. 6:20-cv-00585) Disputed Claim Terms ..............5

                1.      "stationary state" ................................................................5

                2.      "incrementing [of] a count[er] for a stationary state"............6

                3.      "determin[e/ing] a primary set of stationary states" ............6

V.      Terms of U.S. Patent No. 8,751,585 (Case No. 6:20-cv-00577-ADA) ...........................7

        A.      Disputed terms of the '806 patent which only Google seeks to
                construe............................................................................................7

                1.      "a list of actions" and "a plurality of actions" .........................7

                2.      "moving the selected electronic message from the inbox to the
                        archive location after detection of the action defined in the
                        archiving rule,"  "to move the selected electronic message from
                        the inbox to the archive location," and "moving the first
                        electronic message from the inbox of the electronic mail client
                        associated with the user to the first storage location associated
                        with the first archiving rule" ...............................................11

                3.      "client management processor configured to enable the user to
                        select an electronic message from the inbox" (claim 9 only)...............13

                4.      "a detection processor configured to detect the action defined
                        in the archiving rule assigned to the selected electronic message
                        was carried out" (claim 9 only)............................................13

i

5.    "a collaborative application management processor configured
to manage collaborative applications" (claim 9 only)..........................13

## TABLE OF AUTHORITIES

**Cases**

*Azure Networks, LLC v. CSR PLC,*
   771 F.3d 1336 (Fed. Cir. 2014)............................................................................... 1

*Cellular Commc'ns Equip. LLC v. AT&T, Inc.,*
   Case No. 2:15-CV-576-RWS-RSP, 2016 WL 7364266 (E.D. Tex. Dec. 19, 2016) ............... 14

*Clear Imaging Research, LLC v. Samsung Electronics Co., Ltd.,*
   Case No. 2:19-cv-00326-JRG, 2020 WL 6384731 (E.D. Tex. Oct. 30, 2020)........................ 14

*CloudofChange, LLC v. NCR Corp.,*
   No. 6-19-CV-00513-ADA, 2020 WL 4004810  (W.D. Tex. July 15, 2020)........................ 1, 2

*Comark Commc'ns, Inc. v. Harris Corp.,*
   156 F.3d 1182 (Fed. Cir. 1998)............................................................................... 1

*Cont'l Circuits LLC v. Intel Corp.,*
   915 F.3d 788 (Fed. Cir.)............................................................................... 8, 9, 11, 12

*Cypress Lake Software, Inc. v. Samsung Elecs. Am., Inc.,*
   382 F. Supp. 3d 586 (E.D. Tex. 2019) ...................................................................... 14

*Fisher-Rosemount Systems, Inc. v. ABB Ltd,*
   Case No. 4:18-CV-00178, 2019 WL 6830806  (S.D. Tex. Dec. 12, 2019)............................. 15

*Nautilus, Inc. v. Biosig Instruments, Inc.,*
   572 U.S. 898 (2014)............................................................................................... 2, 6

*Phillips* v. *AWH Corp.,*
    415 F.3d 1303 (Fed. Cir. 2005)............................................................................... 1, 9

*Realtime Data, LLC v. Rackspace US, Inc.,*
   2017 WL 2590195, Case no. 6:16-CV-00961 RWS-JDL (E.D. Tex. June 14, 2017)............. 14

*Samsung Elecs. Am., Inc. v. Prisua Eng'g Corp.,*
   948 F.3d 1342 (Fed. Cir. 2020)............................................................................... 14

*Sonix Tech. Co. v. Publ'ns Int'l, Ltd.,*
   844 F.3d 1370 (Fed. Cir. 2017)............................................................................... 2

*Toshiba Corp. v. Imation Corp.,*
   681 F.3d 1369 (Fed. Cir. 2012)............................................................................... 2, 3, 4, 6

*Unwired Planet, LLC v. Apple Inc.,*
   829 F.3d 1353 (Fed. Cir. 2016)............................................................................... 9

*Vitronics Corp. v. Conceptronic*,
    90 F.3d 1576 (Fed. Cir. 1996) ............................................................................................. 5

*Williamson v. Citrix Online, LLC*,
    792 F.3d 1339 (Fed. Cir. 2015) .......................................................................................... 13

**Statutes**

35 U.S.C. § 112 ............................................................................................................... 2, 14

Plaintiff WSOU Investments, LLC d/b/a Brazos License and Development ("WSOU") respectfully submits this claim construction brief in support of its proposed constructions.

## I.    Legal Standards

### A.    Claim Construction Generally

The general rule is that claim terms are generally given their plain-and-ordinary meaning. *Phillips* v. *AWH Corp.,* 415 F.3d 1303, 1312 (Fed. Cir. 2005) *(en banc); Azure Networks, LLC v. CSR PLC,* 771 F.3d 1336, 1347 (Fed. Cir. 2014), *vacated on other grounds by* 135 S. Ct. 1846, 1846 (2015) ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time."). The plain and ordinary meaning of a term is the "meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Philips,* 415 F.3d at 1313. "'Although the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.'" *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant* v. *Advanced Micro-Devices, Inc.,* 848 F.2d 1560, 1571 (Fed. Cir. 1988)). Although extrinsic evidence can also be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Phillips,* 415 F.3d at 1317 (quoting *C.R. Bard, Inc.* v. *U.S. Surgical Corp.,* 388 F.3d 858, 862 (Fed. Cir. 2004)).

This Court recently explained that "[t]he 'only two exceptions to [the] general rule' that claim terms are construed according to their plain and ordinary meaning are when the patentee (1) acts as his/her own lexicographer or (2) disavows the full scope of the claim term either in the specification or during prosecution." *CloudofChange, LLC v. NCR Corp.*, No. 6-19-CV-00513-ADA, 2020 WL 4004810, at *2 (W.D. Tex. July 15, 2020) (quoting *Thorner v. Sony Computer*

*Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). "To act as his/her own lexicographer, the patentee must 'clearly set forth a definition of the disputed claim term,' and 'clearly express an intent to define the term.'" *Id.* (quoting *Thorner,* 669 F.3d at 1365). And "[t]o disavow the full scope of a claim term, the patentee's statements in the specification or prosecution history must represent 'a clear disavowal of claim scope.'" *Id.* (quoting *Thorner,* 669 F.3d at at 1366). "Accordingly, when 'an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable.'" *Id*. (quoting *3MInnovative Props. Co.* v. *Tredegar Corp.,* 725 F.3d 1315, 1326 (Fed. Cir. 2013)).

### B. Indefiniteness

The Patent Act requires claims to particularly point out and distinctly claim the subject matter regarded as the inventions. 35 U.S.C. § 112, ¶ 2. To satisfy this requirement, the claim must be read in light of the intrinsic evidence to determine whether it informs one of skill in the art at the time of the invention "about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910-11 (2014). To establish that a claim is indefinite, a patent challenger must prove indefiniteness by clear and convincing evidence. *Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017).

## II. U.S. Patent No. 7,620,967 (Case No. 6:20-cv-00573) Disputed Claim Terms

### 1. "broadcast/broadcasting"

| WSOU's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | "Simultaneously transmitting an information item to all receivers in a network" |

This term should be given its plain and ordinary meaning. Defendant's proposed construction should be rejected at least for improperly importing limitations from the specification. *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1369 (Fed. Cir. 2012) ("Absent disclaimer or

2

lexicography, the plain meaning of the claim controls."). Defendant's proposed construction improperly seeks to limit broadcasting to "an information item." The claim language itself recites broadcasting "a descriptor relating to each information item" as well as broadcasting "the information items" (*see* '967 patent, 11:4, 11:19). Defendant's proposed construction improperly excludes everything but "an information item." Moreover, Defendant's proposed construction is confusing and unclear for requiring "simultaneously" transmitting. The specification discusses "exploiting the bit rate fluctuations that constantly occur when a network is used." *Id.* 1:66-67. Given that transmissions in a network are not instantaneous, this is an additional reason why Defendant's proposed construction should be rejected.

### III.    U.S. Patent No. 8,559,928 (Case No. 6:20-cv-00575) Disputed Claim Terms

#### 1.    "contact information"

| WSOU's Proposed Construction | Defendant's Proposed Construction |
| --- | --- |
| Plain and ordinary meaning | "Information related to the identity of and communication with an entity." |

This term should be given its plain and ordinary meaning. Defendant's proposed construction is confusing and unhelpful. It is unclear what "information related to the identity <u>and</u> communication with an entity" entails. However, the specification recites that contact information may comprise "names and to each name one or more telephone numbers can be stored, and <u>in some cases</u> also other information." '928 patent, 1:17-20 (emphasis added). In other words, at most, all that is required is a name and one or more telephone numbers. To the extent Defendant's proposed construction can be understood, Defendant's proposed construction should be further rejected for improperly importing limitations not required in the claims or specification. *Toshiba*, 681 F.3d at 1369 ("Absent disclaimer or lexicography, the plain meaning of the claim controls.").

2.      "tree structure"

| WSOU's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | "A non-linear data structure consisting of an ordered set of linked nodes in a connected graph, in which each node has at most one parent node, and zero or more children nodes with a specific order." |

This term should be given its plain and ordinary meaning. Defendant's proposed construction is vague and unhelpful, and Defendant's proposed construction should be rejected for improperly importing limitations not required in the claims or specification. *Toshiba*, 681 F.3d at 1369 ("Absent disclaimer or lexicography, the plain meaning of the claim controls."). There is nothing in the claims or specification that requires the specific elements of Defendant's proposed construction. And there is nothing in the claims or specification in describing a tree structure that recites or requires "non-linear," "ordered," "nodes," "connected graph," "parent node," or "children nodes," "each node has at most one parent node," and "with a specific order." To the contrary, the specification discloses that a tree structure comprises of a plurality of logical levels. '928 patent, 1:40-41. And examples of a tree structure are depicted in Figures 2, 3, and 4. For example, Figure 2 depicts "an example of a group of contact information arranged in a tree structure with a plurality of logical levels":



Fig. 2

*Id.*, Fig. 2.

4

Moreover, as shown in the bottom level (205) of Figure 2, above, the second from the left node is connected to two nodes in the level above it, which expressly shows a preferred embodiment that does not require "each node has at most one parent node." Defendant's proposed construction expressly excludes at least a preferred embodiment and for at least that reason alone, should be rejected. *Vitronics Corp. v. Conceptronic*, 90 F.3d 1576, 1584-85 (Fed. Cir. 1996) (noting that a construction that reads out a preferred embodiment is rarely, if ever, correct and would require highly persuasive evidentiary support).

## IV.    U.S. Patent No. 8,737,961 (Case No. 6:20-cv-00585) Disputed Claim Terms

### 1.    "stationary state"

| WSOU's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | Indefinite |

This term should be given its plain and ordinary meaning. Indeed, it is odd that Defendant contends that this term is indefinite but proposes a definition which includes the term "stationary state" in the next disputed term. Regardless, the specification expressly teaches that a stationary state is "when the mobile device is determined to be not moving outside a specified area based on signal data" '961 patent, 2:37-40. Likewise, in another example, the specification discloses that "[w]hen mobile terminal 150 is not moving substantively, e.g., not moving outside a limited or otherwise specified area, the [wireless transmitter] identifiers indicated by successive signal data fields 203 are similar (changing slightly, for example, if one or more WiFi access points powers up or powers down or the user moves to different locations with an apartment)." *Id.*, 7:17-222. And that "[w]hen a mobile terminal is frequently not moving with similar sets of transmitter IDs, those similar sets define a stationary state, e.g., a limited area where the user of the mobile terminal has a tendency to stay. *Id.*, 7:26-29. In another example, the specification recites that stationary states "represent the places that a user stays." *Id.*, 20:29-30.

5

Moreover, the claim language itself provides context, for example, in claim 1, the claim recites "determining whether the mobile device is moving outside a specified area at a current time of the plurality of different times based on the signal data," and "if the mobile device is determined to be not moving outside the specified area, then causing at least in part an incrementing of a count for a station state associated with the set of one or more distinct signal sources at the current time." *Id.*, 37:10-17. Thus, the specification as well as the claim language itself informs one of skill in the art at the time of the invention "about the scope of the invention with reasonable certainty." *Nautilus*, 572 U.S. at 910-11.

### 2.    "incrementing [of] a count[er] for a stationary state"

| WSOU's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | "incrementing a count representing time at a stationary state" |

This term should be given its plain and ordinary meaning. Defendant's proposed construction at best attempts to re-word the claim language, which is unnecessary and confusing. Furthermore, given that Defendant proposes the term "stationary state" is indefinite (which it is not), Defendant's proposed construction here which includes the term "stationary state" is especially ambiguous. Regardless, the claim language of incrementing of a count for a stationary state fully states the requirements of the claim language, and Defendant's attempt to import an additional limitation of "representing time at a [stationary state]" is not required by the claims or the specification. *Toshiba*, 681 F.3d at 1369 ("Absent disclaimer or lexicography, the plain meaning of the claim controls.").

### 3.    "determin[e/ing] a primary set of stationary states"

| WSOU's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | Indefinite |

This term should be given its plain and ordinary meaning. Additionally, the claims provide

6

context for this claim term.  For example, claim 1 recites: "determining a primary set of stationary states, each stationary state in the primary set associated with a frequently incremented count…" '961 patent, 37:18-22. And the specification discloses that Figures 11A and 11B "are graphs of cumulative distribution of most frequent stationary states for a mobile terminal accumulated incrementally over time…" *Id.*, 3:33-37. And the specification goes on to disclose Tables 6 and 7, where Table 6 shows "Total number of stationary states" and Table 7 shows "Number of stationary states to account for 95% of stationary time."  For example, for User 1, the WiFi data stream type discovered 86 stationary states (Table 6), but only 5 stationary states (out of the 86) accounted for 95% of stationary time (Table 7). *Id.*, 23:15-22, 24:10-18.  In describing Figures 11A and 11B, the specification describes charting the fraction observations (of all observations) attributed to the first through sixth most frequent stationary states. *Id.*, 23:23-54. Thus, as the claim language itself recites, determining a primary set of stationary states includes stationary states with the most observations, or highest (most frequently) incremented counters.

## V.  Terms of U.S. Patent No. 8,751,585 (Case No. 6:20-cv-00577-ADA)

### A.  Disputed terms of the '806 patent which only Google seeks to construe.

#### 1.  "a list of actions" and "a plurality of actions"

| WSOU's Position | Google's Position |
|---|---|
| Plain and ordinary meaning. | "a finite number of selectable items each corresponding to an executable function" |

The terms "a list of actions" (claims 1 and 9) and "a plurality of actions" (claim 17) require no construction, particularly given the respective contexts in which they are recited.  Google errs in seeking to indiscriminately construe both "a list of actions" and "a plurality of actions" to mean "a finite number of selectable items each corresponding to an executable function."

The disputed terms are recited in qualified contexts that are sufficiently definitive on their

face.  For example, claim 1 recites "a list of actions" in the following context: "wherein the action defined in the archiving rule is selected from *a list of actions that can be detected by the communication system*."  Claim 9 similarly recites "wherein the action defined in the archiving rule is selected by the user from *a list of actions that can be detected by the communication system*."  Claims 1 and 9 further qualify the "list of actions" as including "at least one of the following actions[,]" followed by claim language directed to certain actions.  For both claims 1 and 9, the "list of actions" is further limited in terms of "an action" that must be selected from the list.  That selected action is itself qualified (in both claims 1 and 9) in that (1) it "can be subsequently carried out using at least some portion of the communication system," (2) it must be "defined in the archiving rule," and (3) it must be "based at least in part on content of the selected electronic message."  Because the surrounding context qualifies the "action(s)" terms with sufficient clarity and the scope of the "list" term is not disclaimed in any way in either the claims or the specification, the plain and ordinary meaning should apply.

The disputed term "a plurality of actions" (recited only in claim 17) requires no construction because "plurality" and "actions" are plain on their face in the recited context. Moreover, claim 17 expressly qualifies the "plurality of actions" as "a plurality of actions *that can be detected by the communication system*" and by specifying that "the plurality of actions comprising at least one of the following actions …."  When properly read in view of the surrounding context, therefore, no construction is required for the disputed "plurality of actions" term apart from the plain and ordinary meaning.

Google runs afoul of the fundamental canon that adding limitations neither required by claim terms nor unambiguously required by either the specification or the prosecution history of a patent is impermissible.  *See*, *e.g.*, *Cont'l Circuits LLC v. Intel Corp.*, 915 F.3d 788, 796–97 (Fed.

Cir.), *cert. denied*, 140 S. Ct. 648 (2019); *Dayco Prods., Inc. v. Total Containment, Inc.*, 258 F.3d 1317, 1327 (Fed. Cir. 2001).  Google's construction of the "list of actions" term impermissibly seeks to add at least the following extraneous limitations: (1) that the recited "list" must include *multiple* "items," thereby unduly excluded the possibility of a list of *one*; (2) that each one of multiple so-called "items" must be "selectable;" (3) that there must be "*a finite number* of … items" (whatever that means); and (4) that each one of the so-called "items" must "correspond[] to an executable function."  None of these extraneous limitations are required by claim terms or unambiguously required by either the specification or the prosecution history of the '585 patent.

It is significant here that certain claims recite "a list of actions" and others recite "a plurality of actions."  This explicit claim differentiation reveals that these phrases are not interchangeable, but rather when a "plurality" is required the applicant said so.  It would be erroneous, therefore, to unduly restrict "a list of actions" to exclude the possibility of the singular.  *See, e.g., Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (*en banc*), c*ert. denied*, 546 U.S. 1170 (2006) ("Differences among claims can also be a useful guide in understanding the meaning of particular claim terms.") (citation omitted); *Unwired Planet, LLC v. Apple Inc.*, 829 F.3d 1353, 1358–59 (Fed. Cir. 2016) (finding error in construing "voice input" to be limited to a voice input transmitted over a voice channel, but rather was broad enough to cover a voice input transmitted over a voice or data channel, and noting that in other claims the patentee had expressly claimed the use of a voice channel showing that had the patentee intended to limit "voice input" to transmission over a voice channel it could have done so with other language but did not).

Google's extraneous requirement that each one of multiple so-called "items" must be "selectable" also cannot withstand scrutiny in view of the claim language.  Claim 1 recites "the action defined in the archiving rule is selected from a list of actions that can be detected by the

communication system," and claim 9 recites "the action defined in the archiving rule is selected by the user from a list of actions that can be detected by the communication system[.]"  Under a plain and ordinary reading of this claim language, only "the action defined by the archiving rule" need be "selected from a list of actions."  This claim language does not, however, expressly restrict a "list" as requiring multiple items, much less that *each one* of multiple items need be *selectable*, as Google erroneously argues.

The Court should also reject Google's extraneous requirement that each one of multiple so-called "items" must "correspond[] to an executable function."  Claims 1 and 9 both expressly require that the "the action … selected from the list of actions" must be "an action that can be subsequently carried out using at least some portion of the communication system."  Claims 1 and 9 do not, however, qualify the "list" as requiring *multiple* items, much less require that *each one* of multiple items must be "an action that can be subsequently carried out using at least some portion of the communication system."  It would be erroneous, therefore, to adopt as a construction Google's extraneous requirement that each one of multiple so-called "items" must "correspond[] to an executable function."

While claim 17 differs from claims 1 and 9 by reciting "a plurality of actions," it would be erroneous to import into *each one* of the "actions" limitations expressly directed to only the selected "first action."  For example, claim 17 expressly qualifies *only* the recited "first action" as being "*selected* from a plurality of actions," "specified in the first archiving rule" and "carried out using at least some portion of the communication system."  It would be erroneous here to import such limitations into *each one* of the "plurality of actions," as Google evidently seeks to do (*e.g.*, by indiscriminately qualifying *all* so-called "items" as necessarily being "selectable" *and* "corresponding to an executable function").

Accordingly, for a multitude of reasons, the Court should reject Google's construction and find that the disputed terms should be afforded their plain and ordinary meaning.

> 2. **"moving the selected electronic message from the inbox to the archive location after detection of the action defined in the archiving rule," "to move the selected electronic message from the inbox to the archive location," and "moving the first electronic message from the inbox of the electronic mail client associated with the user to the first storage location associated with the first archiving rule"**

| WSOU's Position | Google's Position |
| --- | --- |
| Plain and ordinary meaning. | "moving the selected electronic message from the inbox to a different location in memory corresponding to the previously defined archive location after the communication system detects the action defined in the archiving rule" |

For the various disputed phrases introduced as either "moving" or "to move," Google errors in attempting to conflate those distinct phrases into one by its proposal of reducing them all to a singular, indiscriminate construction. Google compounds its error by then attempting to add extraneous limitations that are neither required by claim terms nor unambiguously required by either the specification or the prosecution history of a patent is impermissible. *See*, *e.g.*, *Cont'l Circuits,* 915 F.3d at 796–97; *Dayco Prods.,* 258 F.3d at 1327.

A comparison of the "moving" limitation recited in claim 1 and Google's indiscriminate construction underscores Google's departure from the claim language. Claim 1 recites "moving the selected electronic message from the inbox to the archive location after detection of the action defined in the archiving rule." Google does not offer a definition for *any* of these terms. Instead, Google simply attempts to redraft the claim language by inserting additional limitations. Using underlining and ellipses to underscore Google's claim redrafting, the difference between Google's construction and the claim language is as follows: "moving the selected electronic message from the inbox to <u>a different location in memory corresponding to</u> the <u>previously defined</u> archive

location after the communication system detect[s] … the action defined in the archiving rule." That Google uses the original claim language, nearly in its entirety, without proposing any definition for *any* of those terms, only confirms that the claim language is plain on its face and no construction is required.  It is also independently fatal to Google's construction that the extraneous element "memory" does not appear *anywhere* in the '585 patent, much less in the context of an *unambiguous requirement* for "moving … to a different location in memory," as Google argues. *See Cont'l Circuits,* 915 F.3d at 796–97; *Dayco Prods.,* 258 F.3d at 1327.

Claim 9 serves to demonstrate Google's problematic approach in proposing a universal construction for phrases that are patently distinct from one another.  Claim 9 recites the disputed term in the fuller context of "an event management processor configured to generate an archiving command *to move the selected electronic message from the inbox to the archive location after detection of the action defined in the archiving rule*."  This distinct context does not expressly require "moving" the selected electronic image.  Rather, the claim language limits the "event management process" in terms of a *command* it must be configured to generate.  To be clear, claim 9 does not affirmatively require either generating or executing such a command.  Google's indiscriminate and erroneous construction, however, would make "moving" an affirmative requirement for claim 9.

Claim 17 further demonstrates Google's problematic approach in proposing a universal construction for phrases that are patently distinct from one another.  Claim 17 recites "specifying a first action"; and all claims depending therefrom (i.e., claims 18–20) further require "specifying a second action" in various contexts.  None of those claims (17–20) expressly recite limitations expressly requiring that the action itself need be "*defined* in the archiving rule," as Google newly seeks to require by its universal construction offered for distinct terms.

For the foregoing reasons, the disputed phrases require no construction; and the Court should reject Google's attempt to use claim construction as an exercise to redraft distinct phrases to all include the same, extraneous limitations.

>   **3.  "client management processor configured to enable the user to select an electronic message from the inbox" (claim 9 only)**

>   **4.  "a detection processor configured to detect the action defined in the archiving rule assigned to the selected electronic message was carried out" (claim 9 only)**

>   **5.  "a collaborative application management processor configured to manage collaborative applications" (claim 9 only)**

| WSOU's Position | Google's Position |
|---|---|
| For all three "… processor configured to …" terms of claim 9: plain and ordinary meaning; not subject to means-plus-function treatment; and definite. | The three disputed "… processor configured to …" terms of claim 9 are all subject to means-plus-function treatment under 35 U.S.C. § 112(f). |
| | **Function**: the remainder of the term recited after "… processor configured to …"—*e.g.*, the function of "client management processor configured to enable the user to select an electronic message from the inbox" is "enable the user to select an electronic message from the inbox." |
| | **Structure**: none (indefinite). |

Google's erroneous means-plus-function construction of the "… processor configured to …" terms (recited only in claim 9) runs afoul of several well-established claim construction canon. According to Google, the "… processor configured to …" terms each invoke Section 112, ¶ 6 and are allegedly indefinite lacking any corresponding structure.  Google is wrong in both respects.

Lack of the word "means" in any of disputed "processor" phrases raises a rebuttable presumption against applying Section 112, ¶ 6. *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348 (Fed. Cir. 2015) (*en banc*).  While the burden lies with Google to rebut the presumption, it failed to advance any argument or evidence in its Invalidity Contentions (or in its disclosure of extrinsic evidence) as allegedly rebutting, or even addressing, the presumption against applying

Section 112, ¶ 6 to the "processor" phrases, where none of them recites the word "means."

Courts have repeatedly rejected similarly flawed claim construction arguments that "processor configured to …" invokes 35 U.S.C. § 112, ¶ 6 as lacking any structural connotation. For example, the Eastern District of Texas recently found "that the presumption against applying § 112, ¶ 6 to the 'processor ... configured to ...' terms stands." *Clear Imaging Research, LLC v. Samsung Electronics Co., Ltd.*, Case No. 2:19-cv-00326-JRG, 2020 WL 6384731, *8-*9 (E.D. Tex. Oct. 30, 2020).  The Court further found that "[a]s used in the Asserted Patents, the term 'processor' is accorded its customary meaning of a class of structures on which software can run." *Id*.  Among a legion of cases the Court cited in support of its construction, the Court cited *Samsung Elecs. Am., Inc. v. Prisua Eng'g Corp.,* 948 F.3d 1342 (Fed. Cir. 2020) for the proposition that "'digital processing unit ... performing [functions]' found to be sufficiently definite structure in part because the claims provided operational context for the unit." *Id*. (citing *Samsung*, 948 F.3d at 1347–48, 1353–54).

Those court findings are consistent with other ample authority of that sister district. *See*, *e.g.*, *Cypress Lake Software, Inc. v. Samsung Elecs. Am., Inc.*, 382 F. Supp. 3d 586, 660 (E.D. Tex. 2019), *reconsideration denied*, No. 6:18-CV-30-JDK, 2019 WL 4935280 (E.D. Tex. Aug. 23, 2019) (claim limitations reciting "device configured to … detect" were not means-plus-function limitations where "the claim language provides a description of how the processor is specifically programmed to operate");  *Realtime Data, LLC v. Rackspace US, Inc.*, 2017 WL 2590195, Case no. 6:16-CV-00961 RWS-JDL *15–*17 (E.D. Tex. June 14, 2017) (term "processor" in a claim reciting that the processor "was configured" to perform certain operations was not a means-plus-function limitation); *Cellular Commc'ns Equip. LLC v. AT&T, Inc.,* Case No. 2:15-CV-576-RWS-RSP, 2016 WL 7364266, at *15 (E.D. Tex. Dec. 19, 2016) ("processor configured to" was not a

means-plus-function limitation and would be given its plain meaning—"Here, 'processor' is not a 'nonce' term, but rather connotes a class of structures").

The Southern District of Texas similarly found that "unlike terms such as 'means,' 'element,' and 'device' that typically do not connote structure, 'processor' can on its own recite at least some structure to persons of ordinary skill in the art." *Fisher-Rosemount Systems, Inc. v. ABB Ltd*, Case No. 4:18-CV-00178, 2019 WL 6830806, *15-*16 (S.D. Tex. Dec. 12, 2019). The Court also identified "several courts [which] have held that 'processor' can connote structure." *Id*. (collecting cases).

The consistent reasoning applied in the ample authority above is equally applicable here. For each of the three disputed terms in question, the phrase "processor configured to" itself recites sufficiently definite structure and the remainder of the term further provides sufficiently definite structure by providing operational context for the processor. Notably, claim 9 does not introduce each term merely as "processor configured to …," but each disputed term here also introduces its respective "processor" with certain additional structural descriptions—*e.g.*, "*a client management* processor configured to…," "*a detection processor configured to* …," "*a collaborative application management* processor configured to …." Under the present facts and circumstances, and in the absence of Google having timely disclosed any expert testimony to conclude otherwise, the presumption against application of a Section 112, ¶ 6 to the disputed "processor" phrases.

15

Dated: January 22, 2021                       Respectfully submitted,

                             By:      */s/ Ryan Loveless*
                                         James L. Etheridge
                                       Texas Bar No. 24059147
Ryan S. Loveless
Texas Bar No. 24036997
Brett A. Mangrum
Texas Bar No. 24065671
Travis L. Richins
Texas Bar No. 24061296
Jeffrey Huang
Etheridge Law Group, PLLC
2600 E. Southlake Blvd., Suite 120 / 324
Southlake, TX 76092
Tel.: (817) 470-7249
Fax: (817) 887-5950
Jim@EtheridgeLaw.com
Ryan@EtheridgeLaw.com
Brett@EtheridgeLaw.com
Travis@EtheridgeLaw.com
Jhuang@EtheridgeLaw.com

Mark D. Siegmund
State Bar No. 24117055
mark@waltfairpllc.com
Law Firm of Walt, Fair PLLC.
1508 North Valley Mills Drive
Waco, Texas 76710
Telephone: (254) 772-6400
Facsimile: (254) 772-6432

*Counsel for Plaintiff WSOU Investments, LLC*

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing instrument was served or delivered electronically via U.S. District Court [LIVE]- Document Filing System, to all counsel of record, on this the 30th day of January 22, 2021.

                        */s/ James L. Etheridge*
                        James L. Etheridge